IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-00325-01-CR-W-BCW |
| ) | |
| JUAN GUZMAN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Pending is Defendant Juan Guzman's Motion for Leave of Court to File Supplemental Motion to Suppress Statement filed on November 2, 2020. Doc. 152. The Government filed its Suggestions in Opposition on November 12, 2020. Doc. 157. Defendant filed his Reply to the Government's Response on November 25, 2020. Doc. 160. For the following reasons, the Court recommends that Defendant's motion be DENIED.

**I. FINDINGS OF FACT**

Defendant Juan Guzman[1] was initially charged by criminal complaint with one count of conspiracy to distribute methamphetamine. Doc. 1. Defendant first appeared before the Court on October 22, 2018. Doc. 6. On the same date, current CJA counsel was appointed to represent Defendant. Doc. 7. Defense counsel has represented Defendant, without lapse in representation, since October 22, 2018.

---

[1] Defense counsel has filed various pleadings on behalf of Defendant Juan Guzman but has referred to Defendant as "Daniel Solorio" on the theory that Daniel Solorio is Defendant's "given name." *See, e.g.,* Doc. 159 at 1, n.1. To avoid confusion, this Court will refer to Defendant as Juan Guzman, consistent with the Indictment in this case. *See* Doc. 16. The Court also observes it previously received correspondence from Defendant, handwritten in English, in which Defendant referred to himself as "Juan Guzman," and included the name "Juan Guzman Villareal" on the return address portion of the envelope to the Court. *See* Docs. 54, 54-1.

On November 14, 2018, Defendant was charged by grand jury indictment with conspiracy to distribute methamphetamine, conspiracy to commit money laundering, possession of firearms in furtherance of drug trafficking crimes, and illegal re-entry into the United States. Doc. 16. The Court entered its Scheduling and Trial Order on January 10, 2019, directing all pretrial motions to be filed "on or before April 12, 2019." Doc. 42. On the date of the pretrial motion deadline, counsel for a co-defendant requested a 60-day extension of time in which to file pretrial motions. Doc. 85. The Court granted the request and ordered all pretrial motions to be filed on or before June 12, 2019. Doc. 88 at 4.

On June 1, 2019, Defendant Guzman timely filed a motion to suppress statements. Doc. 101. After being fully briefed, the Court held a suppression hearing on August 5, 2019. Doc. 117. On September 24, 2019, Magistrate Judge John T. Maughmer issued a Report and Recommendation which recommended Defendant's motion to suppress be denied. Doc. 119. On October 8, 2019, Defendant filed objections to the Report and Recommendation.[2] Doc. 120. On September 24, 2020, the District Court overruled Defendant's objections, adopted the Report and Recommendation, and denied Defendant's motion to suppress. Doc. 145.

On November 2, 2020, just over a month after the District Court entered its Order adopting the Report and Recommendation and denying Defendant's motion to suppress, Defendant filed the pending Motion for Leave of Court to File Supplemental Motion to Suppress Statement, which seeks to challenge the same statements at issue in Defendant's first motion to suppress. Doc. 152. In the motion, Defendant avers he "has identified additional grounds for suppression of [Defendant's] statement to police" through "ongoing work" between counsel and Defendant. *Id*.

---

[2] In its Suggestion in Opposition to the motion currently pending, the Government submits Defendant failed to file objections to the Report and Recommendation. Doc. 157 at 6, n.4. This argument is simply erroneous. Not only did Defendant file objections to the Report and Recommendation (Doc. 120), but the Government filed a response to his objections on October 17, 2019. *See* Doc. 121.

at 2-3. Counsel further states, "[t]hat these grounds were not previously identified owes [sic] to the language barrier between the undersigned counsel and [Defendant]." *Id*. at 3.[3]

Attached as an exhibit to the motion is Defendant's proposed "Supplement to Motion to Suppress Statements to Government Agents on October 19, 2018 Due to Threats and Promises." Doc. 152-1. The supplement provides what Defendant claims are "additional grounds" to suppress Defendant's statements to federal law enforcement officers on October 19, 2018. *Id*. at 1. Specifically, Defendant alleges that, at the time of his arrest on October 18, 2018, officers found him underneath a mattress at a residence in Kansas City, Missouri. *Id.* at 3. Defendant claims that after the arresting officers found him, they pulled him to a semi-standing position on the floor beside the bed, and then proceeded to kick him on the shin area of his leg, causing him to lose balance and fall face-first to the floor. *Id*. Additionally, Defendant contends after he was handcuffed, removed from the house, placed in a paddywagon, and then later removed from the paddywagon, an officer with a "raised voice" in English made, what Defendant interpreted to be, a "threat for physical violence against him" unless he answered questions, particularly about his identity. *Id.*

Defendant also claims officers transported him to the Sugar Creek, Missouri Police Department where he was subsequently interviewed by federal Drug Enforcement Administration ("DEA") agents on October 19, 2018, the day after his arrest. *Id.* at 1, 3-4. Defendant maintains that, at some unknown time prior to his videotaped statement, unidentified law enforcement officers made assurances to him that his statements would not be used against him in a criminal prosecution. *Id.* at 4. Defendant contends the perceived threats and alleged violence against him during his arrest placed him in fear of being "severely injured or killed by law enforcement

---

[3] The motion also avers, however, that Defendant and defense counsel have met on at least twenty-five prior occasions using the services of an expert interpreter. Doc. 152 at 2.

3

Case 4:18-cr-00325-BCW   Document 166   Filed 03/03/21   Page 3 of 14

officers." *Id.* He claims the threat and promises caused him to make the statements to law enforcement officers he is currently seeking to suppress. *Id.*

At the outset, the Court notes Defendant seeks leave of court to file a supplemental pleading in support of his previously filed suppression motion. Doc. 152 at 1. As the initial motion to suppress has been fully litigated and ruled upon by the District Court, the motion is no longer pending and cannot, as a practical matter, be "supplemented." Accordingly, the Court finds the relief sought by Defendant is not entirely clear. Although not specifically requested by Defendant, his motion could be viewed as requesting leave to file a second motion to suppress out of time based on new factual grounds. Alternatively, the motion could be viewed as asking the Court to reopen the original suppression hearing. The Court addresses both possibilities below.

## II. ANALYSIS

### A. Motion for Leave to File Out of Time

Motions to suppress evidence "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(C). This Court has the authority to set a deadline for pretrial motions. Fed. R. Crim. P. 12(c)(1). The Court may consider, at its discretion, untimely pretrial motions "if the party shows good cause" for the delay. Fed. R. Crim. P. 12(c)(3); *see also United States v. Reichel*, 911 F.3d 910, 916 (8th Cir. 2018); *United States v. Trancheff,* 633 F.3d 696, 697 (8th Cir. 2011) (recognizing the district court has discretion to excuse an untimely pretrial motion for good cause). To show "good cause," the movant bears the burden of showing "both cause and prejudice." *United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2019).

Defendant's motion, if viewed as a second motion to suppress, is untimely. As set forth in the Court's Orders, the original deadline to file pretrial motions was April 12, 2019 (approximately

4

five months after the return of the indictment) but was extended to June 12, 2019, at the request of a co-defendant. Docs. 42, 88. Defendant's knowledge of the deadline is evidenced by the timely filing of his initial motion to suppress.[4] Despite being fully cognizant of the expired deadline, Defendant now seeks leave of Court to "supplement" his previously filed and adjudicated suppression motion.

Defendant's proposed supplemental pleading, filed nearly one and one-half years after the initial motion deadline, challenges the same statements that were at issue in the original suppression motion. Defendant argues leave should be granted to file the supplement as counsel has "identified additional grounds for suppression of [Defendant's] statement to police" that were not previously identified due to the "language barrier between [counsel] and [Defendant]." Doc. 152 at 2. However, the language barrier upon which Defendant relies to establish "cause" for the untimely motion is not novel to counsel's relationship with Defendant, nor a novel situation for counsel professionally. Defense counsel represents he has had "many experiences, over the years" working with defendants who have "similar language barrier misunderstandings." Doc. 160 at 4. Defense counsel further avers he has had "some twenty-five [prior] conferences" with Defendant and utilized an "expert interpreter" to facilitate those meetings. Doc. 152 at 2.

Despite counsel's ability to communicate with Defendant sufficiently to file the initial motion to suppress, Defendant attributes the delayed filing due to "ongoing work between counsel and [Defendant]." *Id*. Defendant's motion for leave, however, fails to identify when the alleged "additional grounds" became known to defense counsel.[5] Doc. 152 at 2-3. The alleged "additional

---

[4] Additionally, Defendant's pending motion states pretrial motions were to be filed by April 12, 2019, but the deadline was later extended to June 12, 2019. Doc. 152 at 2.

[5] Defendant's reply indicates his motion says it was being filed "hot on the heels of [counsel] resolving the misunderstanding and learning the information." Doc. 160 at 2-3. Counsel cites his motion to support the timing disclosure (specifically, Doc. 152 at 3); however, this Court cannot find such a statement in the entirety of Defendant's motion indicating when the information was discovered and why it was not previously discovered in the numerous meetings counsel conducted with Defendant using an interpreter.

5

grounds" were not brought to the Court's attention after the initial motion to suppress was filed, during the briefing for same, during the evidentiary hearing, after the Report and Recommendation was issued, in Defendant's objections to the Report and Recommendation, or during the time the Report and Recommendation was under advisement with the District Court. It was not until shortly after the District Court denied Defendant's original motion to suppress that Defendant came forward with additional factual grounds in support of suppressing the same statements. The timing of Defendant's new factual disclosures is questionable.

Because defense counsel has represented Defendant continuously since October 2018, has had twenty-five meetings with Defendant using an expert interpreter before filing the pending motion, and has significant prior experience representing non-English speaking clients, the Court finds that more than ample time has been afforded to Defendant and counsel to fully identify, research, and litigate all suppression issues. It is recommended that the Court, in its discretion, find Defendant has failed to show good cause to consider his untimely motion to suppress. *Trancheff*, 633 F.3d at 697. Because the undersigned recommends a finding that Defendant failed to show good cause, the analysis may end there without discussing prejudice. *Fogg*, 922 F.3d at 391. However, to the extent necessary and for the reasons discussed below, the alleged newly developed facts would not have changed the outcome of the Court's decision regarding the voluntariness of the statements. Accordingly, the Court also recommends a finding that Defendant has not shown "prejudice" under the *Fogg* standard.

**B. Request to Reopen a Suppression Hearing**

Although not explicitly sought, Defendant's supplemental motion could be construed as a request to reopen the suppression hearing to proffer additional facts. After a motion to suppress has been decided, it is within a district court's discretion to reopen a suppression hearing upon a

6

party's request.  *See United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008) (citing *United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008)).  The Eighth Circuit has acknowledged there is no established standard for a district court to apply when faced with a request to reopen a suppression hearing.  *United States v. Laws,* 819 F.3d 388, 396 (8th Cir. 2016).

The Eighth Circuit has identified two factors to be considered in the context of a request to reopen a suppression hearing.  First, the Court should examine whether there is an explanation as to why the evidence proffered could not have been raised during the initial suppression determination.  *See Chavez Loya*, 528 F.3d at 555.  Second, the court should consider whether the evidence would have an impact on the Court's earlier ruling.  *See United States v. Walker,* 840 F.3d 477, 484 (8th Cir. 2016) (finding a motion to reopen a suppression hearing was properly denied where the new evidence the defendant wanted to present would not impact the court's ruling); *Chavez Loya,* 528 F.3d at 555 (concluding a motion to reopen a suppression hearing was properly denied where proffered evidence pertained to a search that resulted in drugs different from the drugs that supported his conviction); *Gill*, 513 F.3d at 846 (holding a motion to reopen a suppression hearing was properly denied because the proffered evidence was of limited probative value).

As noted above, the Court does not believe the late timing of this request is justifiable "good cause" or a valid reason to reopen the suppression hearing.  The Court must also consider whether the proffered evidence would have affected the prior decision on the motion to suppress.  *See Walker,* 840 F.3d at 484; *Gill*, 513 F.3d at 846.  The additional evidence Defendant seeks to introduce is found in paragraph five of his proposed "Supplement to Motion to Suppress Statements to Government Agents on October 19, 2018 Due to Threats and Promises."  Doc. 152-1 at 3.  Specifically, Defendant states the following:

7

> On October 18, 2018, Mr. Solorio was arrested in the bedroom of the house at 6217 E 95th Terrace, Kansas City, Missouri. At the outset, Mr. Solorio was laying underneath the mattress of the bed in that bedroom. At that point, per directives by law enforcement officers, Mr. Solorio began arising from a laying position. Next, two officers took hold of Mr. Solorio by his arms and shoulders and pulled him to a semi-standing position on the floor beside the bed. Then, one officer kicked Mr. Solorio on the shin area of his left leg, inflicting a severe, painful injury to Mr. Solorio's leg, and causing Mr. Solorio to lose his balance, which in turn contributed to cause Mr. Solorio to fall face-first to the floor. After applying handcuffs to the prone Mr. Solorio, officers removed Mr. Solorio from the house, and placed him in a paddywagon. Shortly thereafter, officers removed Mr. Solorio from the paddywagon, at which time an officer, in English and a raised voice, made what Mr. Solorio interpreted to be a threat for physical violence against him (Solorio) unless he (Solorio) answered questions, particularly about his (Solorio's) identity.

*Id*. Defendant alleges, "[b]ecause of threats and violence against [Defendant] . . . [Defendant] was reasonably in fear that, if he did not answer law officer questions, he [Defendant] would be severely injured or killed by law officers." *Id*. at 4. The Court must determine whether the actions of law enforcement officers alleged by Defendant would have impacted the Court's decision that Defendant's waiver of *Miranda* rights was made freely and voluntarily. *See Walker,* 840 F.3d at 484; *Gill*, 513 F.3d at 846.

In the first Report and Recommendation (Doc. 119), Judge Maughmer analyzed the voluntariness of Defendant's waiver of his *Miranda* rights in light of the evidence before the Court at that time. There were no allegations made or testimony proffered that Defendant was threatened or coerced into speaking with law enforcement officers at any point. For the first time in the pendency of this case, Defendant's supplement to the motion to suppress raises the issue as to whether he was threatened or coerced to waive his *Miranda* rights based on the alleged actions of the arresting officers.

As explained *infra*, the undersigned recommends a finding that upon review of the totality of the circumstances, the newly proffered facts, if taken as true, would not change the outcome of the Court's original decision. The first Report and Recommendation observed it is well-settled

8

law that a criminal suspect may waive the rights contained in the *Miranda* warnings "provided the waiver is made voluntarily, knowingly and intelligently." Doc. 119 at 10 (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). The United States Supreme Court has held that an inquiry into the waiver of an individual's *Miranda* rights "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the waiver must have been made voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. Second, the waiver must have been made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. Whether or not a confession is made freely and voluntarily must be determined in light of the totality of the circumstances. *See United States v. Hyles*, 479 F.3d 958, 966 (8th Cir. 2007).

### 1. Alleged Physical Injury During Arrest

Defendant alleges the actions of law enforcement officers at the time of his arrest made him "reasonably in fear that if he did not answer law officer questions, [Defendant] would be severely injured or killed by law officers." Doc. 152-1 at 4. The arresting agents were executing two arrest warrants —one issued in May 2018 by Wyandotte County, Kansas District Court for offenses related to dangerous drugs, and another issued on October 16, 2018, by Wyandotte County for aggravated robbery and theft of a firearm. Doc. 109 at 2-3. Defendant was arrested at approximately 7:09 p.m. on October 18, 2018. *Id.* at 3. He was not, however, interviewed by the same individuals who arrested him. Instead, Defendant was questioned by special agents with the DEA. *Id.* at 4. The DEA agents did not question Defendant until over fifteen hours after his arrest, at approximately 10:30 a.m. on October 19, 2018. *Id*.; *see also* Doc. 109 - Exhibit 1. Defendant has provided no evidence or allegation that anyone threatened or coerced him during the more than

fifteen hours between his initial arrest and his interview when he waived his *Miranda* rights. *See* Docs. 152, 152-1.

Instead, Defendant claims the arresting officers, after discovering him hiding underneath a bed mattress, kicked his shin, which caused him to fall face-first to the floor. Doc. 152-1 at 3. Defendant characterizes the kick as causing a "severe painful injury." *Id.* In its opposition, the Government avers that when the officers were executing the warrants, they stopped several people as they ran away from the residence, encountered other subjects in the kitchen of the residence, and observed firearms throughout the house. Doc. 157 at 6-7. The officers found three other subjects hiding in a bedroom, including Defendant who was hiding between a mattress and box springs. *Id.* The officers observed a semi-automatic firearm on the floor next to Defendant. *Id.* The Government argues that if the officers used force when taking Defendant into custody, it was a justifiable use of force under the totality of the circumstances. *Id.*

Assuming Defendant's allegations are true, the arresting officer's actions did not rise to the level of excessive force under the totality of the circumstances and were not significant enough to have adversely affected the voluntariness of Defendant's subsequent statement some fifteen hours later. An arresting officer need not take action "devoid of all risk of harm to the arrestee when moving, or attempting to move, that arrestee to another location." *Kasiah v. Crowd Sys.,* 915 F.3d 1179, 1184 (8th Cir. 2019). Furthermore, the use of force during an arrest is not excessive where "it involves only the level of physical coercion necessary to execute an otherwise lawful seizure." *Carter v. Huterson*, 831 F.3d 1104, 1109 (8th Cir. 2016); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009); *Graham v. Connor,* 490 U.S. 386, 396 (1989) (observing "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or

10

threat thereof to effect it."). Further, courts, including the Eighth Circuit, have upheld the validity of *Miranda* waivers and the voluntariness of statements even in circumstances where a defendant sustained an injury during an arrest. *See, e.g., United States v. Havlik*, 710 F.3d 818, 822-23 (8th Cir. 2013) (concluding the defendant's chest injury during arrest did not undermine the voluntariness of his waiver or his statement); *United States v. Carroll,* 207 F.3d 465, 472 (8th Cir. 2000) (finding the defendant's statement made after police used physical force and mace during his arrest was deemed voluntary as there was no evidence he answered questions because he feared the police would use further force against him); *United States v. Yunis*, 859 F.2d 953, 960 (D.C. Cir. 1988) (observing that despite the defendant's fractured wrists and seasickness, his waiver was voluntary).

A statement is involuntary when, in light of the totality of the circumstances, it is the result of such pressure exerted upon the suspect that his will was overborne. *Carroll,* 207 F.3d at 472. The video of Defendant's interview with the DEA agents does not show any negative effects from the manner in which Defendant was allegedly treated during the arrest or any evidence that his will was overborne by the DEA agents who questioned him. In the video, Defendant was able to walk into the interview room without assistance, did not appear to be limping or injured to any degree, and did not seem to be suffering from any pain or distress. Doc. 109 - Exhibit 1. At no point in his interview did Defendant display any signs of fear or apprehension of the interrogating officers. *Id.* Notably, the DEA agents did not threaten Defendant or have inappropriate physical contact with him. *Id.* If physical force was used during the initial arrest, the change of location, the passage of approximately fifteen hours, and the fact that the arresting officers were different from the interviewing agents are all sufficient circumstances to dispel any negative or coercive effects that may have been created at the time of Defendant's arrest. Defendant's allegation of

11

force during his arrest did not create a circumstance where he agreed to a later interview because he feared the DEA agents, who did not arrest him, would use further force against him.

### 2. Arresting Officer's Alleged Use of a Raised Voice

Defendant also alleges he was threatened by law enforcement officers when he was removed from a paddywagon after being handcuffed, and "an officer, in English and a raised voice, made what [Defendant] interpreted to be a threat for physical violence against [Defendant] unless [Defendant] answered questions, particularly about [Defendant's] identity." Doc. 152-1 at 3. However, the Eighth Circuit has held officers frequently use tactics to elicit confessions, including raising their voices, that do not render the information as involuntarily obtained. *United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005) ("None of these tactics render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.") (quoting *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993) (internal quotations omitted)). A law enforcement officer raising his or her voice, standing alone, would not warrant Defendant's subsequent statements being suppressed. *See Brave Hart*, 397 F.3d at 1041.

The use of a raised voice upon arrest did not taint the subsequent statement given to DEA agents. The video recording of Defendant's interview and its transcript demonstrate the interrogating officers did not raise their voices, did not threaten Defendant, and did not display any act of aggression toward him.[6] *See* Doc. 109 – Exhibit 1. The agents spent approximately four and a half minutes going over the *Miranda* waiver with Defendant, ensuring he understood his rights, and explaining he did not have to sign the waiver. *Id*. Despite Defendant's new allegations, any concerns Defendant may have expressed during his interview did not involve the arresting officers or the agents who were interviewing him, but instead involved the individuals with whom

---

[6] At one point during the interview, one DEA agent uses his phone to show Defendant a map, and Defendant voluntarily and without hesitation leans forward, closer to the agent, to get a better view.

12

he had previously worked. *Id.* Even assuming an arresting officer raised his voice when attempting to ascertain Defendant's identity, this evidence did not cause Defendant's will to be overborne when he was interviewed the next day and would not change the determination that Defendant's statement was freely and voluntarily given.

### 3. Alleged Promises About Statements Not Being Used Against Him

Finally, without any factual detail, Defendant claims unidentified law enforcement officers advised him at some unspecified time prior to his video statement that his statements would not be used against him. Doc. 152-1 at 4. The *Miranda* waiver and the subsequent statements of the interrogating DEA agents on the video squarely controvert this allegation. At no point during the interview of Defendant on October 19, 2018 did the DEA agents advise Defendant that his statements would not be used against him. Doc. 109 - Exhibit 1. In fact, the agents on the video clearly provided Defendant his *Miranda* warnings, which, among other things, advised Defendant his statements could be used against him. *Id*. Even if an earlier officer suggested to Defendant that his statements would not be used against him, the subsequent *Miranda* warnings as discussed on the video statement more than adequately cleared up any confusion caused by a statement made by an unidentified officer at an unknown time.

The undersigned recommends a finding that the evidence proffered by Defendant in his "Supplement to Motion to Suppress Statements to Government Agents on October 19, 2018 Due to Threats and Promises" would have not impacted or changed the initial decision made by the Court denying Defendant's Motion to Suppress Statements.

### IV. CONCLUSION

As set forth in the initial Report and Recommendation, the interview between law enforcement officers and Defendant did not contain any evidence that they threatened or

13

intimidated Defendant to waive his rights. Doc. 119 at 3-8. Since Defendant is attempting to suppress the statements made to law enforcement officers, the video of the statement remains the best evidence of what actually transpired and demonstrates the statement was voluntarily given. The new evidence, if true, is not sufficient to support a finding that Defendant's will was overborne to such a degree that his statement was involuntarily given to the DEA agents.

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant Guzman's Motion for Leave of Court to File Supplemental Motion to Suppress Statement. Doc. 152.

Counsel are reminded they have fourteen days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

**IT IS SO ORDERED.**

DATE: March 3, 2021                          */s/ W. Brian Gaddy*
                                              W. BRIAN GADDY
                                              UNITED STATES MAGISTRATE JUDGE